UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PAREXEL INTERNATIONAL, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| REGADO BIOSCIENCES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT AND JURY DEMAND

The instant dispute centers on the Plaintiff's contractual right to be paid for services rendered on a clinical trial that Defendant cancelled after a patient fatality.

## THE PARTIES

1.      PAREXEL International, LLC ("PAREXEL") is a Delaware corporation with its principal place of business located at 195 West Street, Waltham, Massachusetts 02451.

2.      Regado Biosciences, Inc. ("Regado") is a Delaware corporation with its principal place of business located at 106 Allen Road, 4th Floor, Basking Ridge, New Jersey 07920.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the Parties are citizens of different States and the amount in controversy exceeds $75,000.

4.      Venue is appropriate in this Court pursuant to the Parties consent by contract and also by 28 U.S.C. § 1391(b)(3) by virtue of the Defendant's transaction of business within the Commonwealth.

## FACTS

5.       PAREXEL is a leading global bio/pharmaceutical services organization, providing a broad range of knowledge-based contract research, medical communications and consulting services to the worldwide pharmaceutical, biotechnology, and medical device industries.

6.       PAREXEL and its affiliates have more than 16,000 employees in over 50 countries worldwide.

7.       As part of the services it provides, PAREXEL helps pharmaceutical industry clients test new drug compounds and obtain approval for those products from the Food and Drug Administration and other regulatory authorities around the world.

8.       Regado is a company in the business of developing, manufacturing, and marketing pharmaceutical products.

9.       On or about January 14, 2015, Regado announced its agreement to merge with Tobira Therapeutics, Inc. ("Tobira"), with the transaction expected to close in the second quarter of 2015.

### A.       The Contractual Relationship

10.       PAREXEL and Regado entered into a Master Services Agreement (the "MSA") dated January 8, 2013, pursuant to which they entered into Work Order No. 1 (the "Work Order"), with an effective date of January 22, 2013.

11.       Pursuant to § 2.1 of the MSA, the Work Order "is incorporated and governed by" the MSA.

12.       Under the Work Order, PAREXEL would provide clinical trial management services for a study called REGULATE-PCI (the "Study"), intended to determine the safety and

efficacy of Regado's REG1 Anticoagulation System as compared to bivalirudin (an anti-coagulant medication) in patients undergoing angioplasty.[1]   The Study was scheduled to take place in twenty-two countries around the world and continue through January 2016.

13.     The Work Order contemplated a study budget of roughly $75.6 million, including approximately $26.5 million in service fees to PAREXEL, invoiced both monthly and at the achievement of certain enumerated study progress "milestones" over the course of approximately 3 years.

14.     PAREXEL's scope of work under the Work Order included initiating and managing 243 study sites in 20 countries outside of North America where patients participating in the Study would be treated and enrollment of 9,240 patients to participate in the Study at those sites.  Regado engaged two other entities to initiate and manage the Study's clinical trial sites in the United States and Canada.

15.     PAREXEL was engaged to, among other things, train the site personnel regarding the Study protocol and monitor the Study for compliance with the Study protocol and applicable regulatory requirements.   The Work Order contained a list of other task categories, with a schedule of anticipated "milestone" dates.

16.     Regado and PAREXEL executed the MSA and the Work Order in May and June, 2013, respectively.

17.     Pursuant to the Work Order, which refers to PAREXEL as "Service Provider," Regado also agreed to the following:

> Regado will reimburse Service Provider for all reasonable out-of-pocket expenses, including without limitation, printing, shipping, wire transfer fees, telephone, travel and lodging, incurred by Service Provider in providing the Services, and payments made to

---

[1]  The medical term for angioplasty is "percutaneous coronary intervention," or "PCI."

third parties in connection with the Services ("Pass-Through Expenses"). Pass-through expenses will be in invoiced monthly as incurred.

18.     From approximately June 2013 through August 2014, PAREXEL submitted invoices to Regado for service fees (including monthly management fees and milestone achievement fees) and Pass-Through Expenses. Regado paid each of those invoices without complaint.

19.     Section 19.2 of the MSA provides, in pertinent part, as follows:

> **Entire Agreement.** This Agreement, including any Work Order(s) and attachments hereto, constitutes the entire understanding of the parties hereto with respect to the subject matter hereof and supersedes and replaces all prior contracts, agreements, and understandings relating to the same subject matter, whether written or oral… No waiver, consent, change or modification to this Agreement will be binding, unless in writing and signed by duly authorized representatives of Service Provider and Regado.

**B.      The Study**

20.     According to the Work Order, the Study was to begin on January 22, 2013.

21.     As a result of Regado's insistence on adding layers of administrative oversight to PAREXEL's normal processes, as well as other progress interruptions caused entirely by Regado, the Work Order timeline was initially, substantially delayed.

22.     Section 13.1 of the MSA provides as follows:

> Service Provider's performance under this Agreement or any Work Order may be contingent upon the performance of obligations by another party, including, but not limited to, Regado itself, Regado-Designated Vendors and other third parties. To the extent that Service Provider is delayed or unable to perform its obligations under this Agreement or any Work Order as a result of another party's failure to perform its obligations (other than a Subcontractor retained by Service provider), in a timely manner or otherwise, such delay or failure to perform by Service Provider will not be deemed a breach by Service Provider.

23.     On or about June 23, 2014, a patient enrolled in the Study died due to a negative reaction to the Study drug.  In response, Regado paused enrollment in the Study on or about June 29, 2014, in order to analyze Study patient data for safety concerns.  However, PAREXEL continued to conduct Study monitoring services both at those sites that had been initiated and with patients who had already been enrolled in the Study, and PAREXEL continued to manage the Study.

24.     Regado formally terminated the Study and the Work Order due to safety concerns about the Study drug on or about August 29, 2014, which was approximately seventeen (17) months before the planned completion date of January 29, 2016.

25.     As a result of the delays that Regado caused and the Study's early termination, PAREXEL was prevented from achieving many of the Work Order milestones.  Nevertheless, PAREXEL was on track to meet those milestones at the time Regado terminated the Study.

26.     In compliance with regulatory requirements and Good Clinical Practices (ICH-GCP) – the international standards for the clinical research industry – PAREXEL continued to work on the Study to complete site "close-out" activities beginning on or about August 29, 2014 and continuing through October 2014.

27.     Section 5.5 of the MSA, which refers to PAREXEL as "Service Provider," provides as follows concerning Regado's payment obligations to PAREXEL upon cancellation of the Study:

> … Upon expiration and/or termination of this Agreement and/or any Work Order, Regado will pay Service Provider *for all Services performed through the date of termination,* including without limitation, Closeout Services, non-cancelable costs and all Pass-Through Expenses incurred by Service Provider up to and including the completion of Closeout Services – Any final payment still owed to Service Provider or any refund due Regado, pursuant to this Section, will be made by Regado or Service

Provider as applicable, within thirty (30) days of the final reconciliation invoice(s) from [PAREXEL].  (*Emphasis added*.)

28.     Although PAREXEL only invoiced Regado for monthly management fees and for milestone achievements, PAREXEL also tracked the value of the work it performed towards the Study milestones.

29.     Regado knew of this practice and asked PAREXEL for an estimate of unbilled charges in connection with preparation of quarterly financial statements.  In early July 2014, PAREXEL reported $3.7 million worth of unbilled charges related to milestones not yet achieved to Regado.

30.     Section 4.1 of the MSA requires Regado to pay PAREXEL "the Service fees specified in the applicable Work Order."

C.     **Regado's Determination to Avoid Paying PAREXEL**

31.     When the Study began, Regado had approximately seven clinical trial-focused employees.  In or about September 2014, Regado began to eliminate those clinical positions.  Currently, Regado has no employees in clinical trial-focused positions and is not conducting any clinical trials.

32.     As of November 14, 2014, Regado had a past due balance to PAREXEL of $768,231 related to the Study.  PAREXEL's Credit and Collection Manager, Bob Michael, contacted Regado's then-CFO, R. Don Elsey, regarding this balance, first receiving no response and then, a week later, an assured response by the following week.

33.     PAREXEL issued additional invoices related to Pass-Through Expenses, and by November 28, 2014, the total invoiced and/or past due balance grew to $1,865,063.

34.     Pursuant to Section 5.5 of the MSA, on or about December 8, 2014, PAREXEL submitted an invoice to Regado, with a summary reconciliation, for $5,805,421 for services

PAREXEL performed on the Study but had not yet billed due to the Study termination.  The due date for that invoice was January 7, 2015.

35.     On or about December 18, 2014, Mr. Elsey e-mailed Robert Plunk, a Senior Project Leader at PAREXEL who managed the Study.  To PAREXEL's surprise, Mr. Elsey proposed, based on his purported review and analysis of PAREXEL's performance, that Regado pay PAREXEL $1,412,000 in satisfaction of the $7,670,484 in Pass-Through Expenses and service fees then due and owing to PAREXEL in connection with the Study.

36.     Mr. Plunk did not respond to Mr. Elsey's e-mail, instead referring the matter to PAREXEL's Finance Department.

37.     Mr. Michael called Mr. Elsey and told him that PAREXEL could not entertain his proposal to pay only $1.412 million in satisfaction of PAREXEL's outstanding invoices (much less any future invoices), but PAREXEL wanted Regado to make that payment as at least a partial payment towards Regado's outstanding balance at the time with the Parties to continue discussions regarding the timing of Regado's payment of the remaining outstanding balance.

38.     Regado wired $1.412 million to PAREXEL on December 22, 2014.  No endorsement or communication from Regado accompanied the wire transfer.  There was no written agreement or other documentation signed by either party memorializing any settlement or waiver of any rights under the MSA.

39.     Immediately thereafter, on or about December 23, 2014, PAREXEL issued another invoice to Regado for additional Pass-Through Expenses that PAREXEL incurred on Regado's behalf in relation to the Study.

40.     On or about January 15, 2015, Mr. Michael contacted Mr. Elsey regarding the approximately $6,381,703 that was then outstanding to PAREXEL, attaching a spreadsheet with

the relevant invoice and payment history.  Mr. Elsey responded that he would review the materials and get back to Mr. Michael.

41.     PAREXEL did not hear from Mr. Elsey until February 2, 2015, when PAREXEL received a letter suddenly alleging an accord and satisfaction regarding the outstanding amount due to PAREXEL – but nonetheless offering additional funds to resolve the matter – and disingenuously disparaging PAREXEL's performance on the Study, in reliance upon entirely inaccurate factual assertions.

42.     On or about March 5, 2015, PAREXEL issued another invoice to Regado for additional Pass-Through Expenses that PAREXEL incurred on Regado's behalf in relation to the Study.

43.     Regado currently owes PAREXEL $6,543,936 in service fees and Pass-Through Expenses in relation to the Study.

**D.     Dispute Resolution**

44.     Section 18 of the MSA, entitled "DISPUTE RESOLUTION," provides as follows:

> If a dispute arises between the parties relating to this Agreement, the parties will meet and attempt to resolve the dispute in good faith.  In the event the dispute is not resolved through negotiation within ten (10) business days after said meeting, the parties will submit to confidential, non-binding mediation before a mutually acceptable mediator.  Each party will designate at least one corporate officer with full authority to resolve the dispute who will attend and participate in the mediation.  If the dispute remains unresolved after mediation, then each party will be free to pursue any available remedy at law or in equity.  Each party will bear its own legal fees and any costs incurred by this Section.

45.     The Parties have fulfilled the obligations under MSA § 18.  The Parties engaged in negotiations that were unsuccessful.  On March 26, 2015, the Parties engaged in mediation

before a mutually acceptable mediator in Boston, Massachusetts, and a representative from each party with full settlement authority attended.  The mediation did not resolve the matter.

### COUNT ONE
*Breach of Contract – Service Fees*

46.     PAREXEL repeats and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

47.     PAREXEL and Regado are parties to the MSA and the Work Order, which is a binding contract between them.  PAREXEL has performed its obligations under its contract with Regado.

48.     Regado has breached the obligation imposed on pursuant to Section 5.5 of the MSA to pay PAREXEL for all of the services that PAREXEL performed through the date that Regado terminated the Study, including subsequent closeout services.

49.     PAREXEL has been damaged as a result of Regado's breach, which has deprived PAREXEL of $5,805,421 in revenue duly earned under the MSA.

### COUNT TWO
*Breach of Contract – Pass-Though Expenses*

50.     PAREXEL repeats and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

51.     PAREXEL and Regado are parties to the MSA, which is a binding contract between them.  PAREXEL has performed its obligations under the MSA.

52.     Regado has breached its obligations pursuant to the MSA and the Work Order to reimburse PAREXEL for Pass-Through Expenses as defined in the MSA and Work Order.

53.     PAREXEL has been damaged as a result of Regado's breaches, which have deprived PAREXEL of $738,515 in funds PAREXEL paid on behalf of Regado in connection

with the Study as Pass-Through Expenses.

## COUNT THREE

*Breach of Implied Covenant of Good Faith and Fair Dealing*

54.    PAREXEL repeats and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

55.    PAREXEL and Regado are parties to the MSA and Work Order, which is a binding contract between them.  PAREXEL has performed its obligations under its contract with Regado.

56.    The contract between the parties contains an implied covenant of good faith and fair dealing.

57.    Through arbitrary and unreasonably conduct, Regado has prevented PAREXEL from receiving the fruits of the bargain as expressed by the contract between the parties.

58.    Regado has made claims regarding its payment obligations that it knows are false and has further argued that it has no payment obligations under § 5.5 of the MSA to pay PAREXEL for the services it performed in good faith both towards achieving milestones prior to Regado's termination of the Study and in performing required close-out activities afterward.

59.    Regado's breach of the implied covenant of good faith and fair dealing has damaged PAREXEL.

## COUNT FOUR

*Violation of G.L. c. 93A, § 11*

60.    PAREXEL repeats and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

61.    PAREXEL and Regado are corporations who were engaged, under the MSA and Work Order, in a business transaction in the conduct of trade or commerce.

62.     Despite the clear language of MSA § 5.5, Regado unfairly has attempted to allege a completely fabricated accord and satisfaction agreement – for an amount millions of dollars below the amount it knows to be due and owing under the MSA – on PAREXEL.

63.     Despite clear knowledge that PAREXEL rejected its proposal to pay just $1.412 million of a debt totaling over $7.67 million, Regado has disingenuously continued to insist that wire payment resolved all of its then current as well as future payment obligations.

64.     Regado's conduct has been unfair, unethical and otherwise in violation of G.L. c. 93A, § 2.

65.     Regado's conduct occurred primarily and substantially in the Commonwealth of Massachusetts because its settlement-related communications have been directed to PAREXEL in Massachusetts, and PAREXEL, which is headquartered in Massachusetts, has suffered damages in Massachusetts as a result of Regado's unfair conduct.

### RELIEF REQUESTED

Plaintiff PAREXEL International, LLC respectfully requests that this Court enter a Judgment:

    (1)     Awarding PAREXEL judgment on each and every Count of the Complaint;

    (2)     Awarding PAREXEL its actual damages;

    (3)     Awarding PAREXEL multiple damages pursuant to G.L. c. 93A;

    (4)     Awarding PAREXEL reasonable attorney's fees, under G.L. c. 93A or otherwise; and

    (5)     Awarding PAREXEL such other and further relief as the Court deems just and proper or as PAREXEL may be able to demonstrate it is entitled.

### JURY DEMAND

PAREXEL hereby demands a trial by jury on all Counts of the Complaint so triable.

Respectfully submitted,

PAREXEL INTERNATIONAL, LLC
By its attorneys,

/s/ Kurt S. Kusiak

Kurt S. Kusiak (BBO #559254)
  ksk@sally-fitch.com
William G. Cosmas, Jr. (BBO #670631)
  wgc@sally-fitch.com
SALLY & FITCH LLP
One Beacon Street, 16th Floor
Boston, MA 02108
Dated:  March 30, 2015                          617-542-5542